IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JODY JOHNSON : | |
| 618 CLINTON ST : | |
| SANDUSKY, OH 44870 : | |
| : | |
| and : | |
| : | CASE NO. 3:23-cv-730 |
| EMILY MCKENZIE : | |
| 6208 SKADDEN RD : | JUDGE |
| SANDUSKY, OH 44870 : | |
| : | MAGISTRATE JUDGE |
| and : | |
| : | |
| SHELBY SKELTON : | |
| 530 EAST ADAMS ST. APT 1 : | |
| SANDUSKY, OH 44870 : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | |
| : | |
| 212 FREMONT SANDUSKY WINE : | |
| & SPIRIT, LLC : | |
| c/o AGENT: LARREN WIKEL : | |
| P.O. BOX 969 : | |
| SANDUSKY, OH 44871 : | **Jury Demand Endorsed Hereon** |
| : | |
| : | |
| : | |
| Defendant. : | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

NOW COMES Plaintiff Jody Johnson, Plaintiff Emily McKenzie, and Plaintiff Shelby Skelton, (Collectively referred to herein as "Plaintiffs") and proffer this Amended Complaint for damages against Defendant 212 Fremont Sandusky Wine & Spirit, LLC. ("Defendant").

## JURISDICTION AND VENUE

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964 and Ohio Laws of Discrimination. This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. §1367 as this Complaint raises claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction.

2. Venue is proper in this forum pursuant to 28 U.S.C. §1391(b) because the claim arose in the Northern District of Ohio, where at all times material herein Defendant has maintained a place of business at which Plaintiffs worked.

3. Plaintiffs have complied with all jurisdictional prerequisites to the filing of this lawsuit and this Complaint is filed within ninety (90) days of Plaintiffs' receipt of their Right to Sue letters from the Equal Employment Opportunity Commission, a copy of each is attached hereto as "Exhibit A," "Exhibit B," and "Exhibit C."

## THE PARTIES

4. Plaintiffs are natural persons residing in Erie County, Ohio.

5. Defendant is a domestic company doing business in the Northern District of Ohio.

6. Plaintiffs were "employees" of Defendant as defined by Title VII of the Civil Rights Act of 1964, U.S.C. § 2000e, *et seq* and the Ohio Civil Rights Act, R.C. § 4112 at all relevant times herein.

7. Defendant is an "employer" as defined by Title VII of the Civil Rights Act of 1964, U.S.C. § 2000e, *et seq*. and the Ohio Civil Rights Act, R.C. § 4112.

## FACTUAL BACKGROUND – PLAINTIFF SHELBY SKELTON

8. Plaintiff Shelby Skelton was hired by the Margaritaville Restaurant on or about April 6, 2022, as a Server.

2

9. The Margaritaville Restaurant was subsequently sold to Defendant later in 2022, and Plaintiff Skelton was hired by Defendant in or around November 2022.

10. Plaintiff Skelton was supervised by Defendant's General Manager, Daryl Mominee, and her job duties involved working closely with him to wait tables, take orders, and provide customer service to the restaurant's patrons.

11. Prior to her termination in December of 2022, Mr. Mominee sexually harassed Plaintiff Skelton on a near daily basis.

12. Mr. Mominee wasted no time speaking his mind about Plaintiff Skelton's body. Within a few days of them working together, Mr. Mominee regularly made comments to Plaintiff Skelton about her breasts, and how big they were for someone her age.

13. It is important to keep in mind that Mr. Mominee was not afraid to admit that he liked young girls.

14. As such, Plaintiff Skelton, a 20-year-old woman, was forced to endure blatant sexual harassment from a man nearly twice her age.

15. In one instance, Plaintiff Skelton conversed with a restaurant patron and walked away from the table. Mr. Mominee approached Plaintiff Skelton and said, "This customer is only talking to you because you have big boobs."

16. Even when Mr. Mominee was not speaking directly to Plaintiff Skelton, he made daily comments about all the women he has had sex with and bragged about how many women he "bedded."

17. Mr. Mominee was not the only supervisor who openly discussed his sexual conquests in front of Plaintiff Skelton.

18. Kitchen Manager Daevon "D" LNU, who was hired by Mr. Mominee, also discussed his sex life in the open and how "felons are good at sex." Daevon LNU would also talk about how he liked young girls.

19. In or around the beginning of December 2022, Plaintiff Skelton noticed a rapid and significant shift in Mr. Mominee's attitude.

20. Plaintiff Skelton opposed all of Mr. Mominee's sexual comments and advances, and as a result Mr. Mominee became very rude after he realized that she would not give in to his sexual desires.

21. Notably, Plaintiff Skelton saw Mr. Mominee's attitude worsen significantly about 3 days prior to her termination.

22. For example, Plaintiff Skelton encountered an issue with the restaurant's new POS system and asked Mr. Mominee for assistance in order to cash out customers.

23. Mr. Mominee quickly became hostile and threatened her with, "Say another word, I dare you.

24. On or about December 12, 2022, Mr. Mominee abruptly terminated Plaintiff Skelton for being a "poor fit" and "treating employees unfairly."

25. Plaintiff Skelton's abrupt termination prompted her to act.

26. Plaintiff Skelton performed a convoluted and lengthy search for the proper contact information, and eventually contacted Defendant's parent company, Erie Blacktop Inc. on or about December 13, 2022, just one day after her termination.

27. Plaintiff Skelton reported her concerns about Mr. Mominee's behavior to Human Resources Manager, Tara Jensen.

28. Ms. Jensen asked why Plaintiff Skelton did not tell her sooner, and quickly shifted the blame when Ms. Jensen insinuated that Plaintiff Skelton's allegations against Mr. Mominee were a retaliatory response to her termination just one day prior.

29. Plaintiff Skelton was working under a direct supervisor that was sexually harassing her – it is not her obligation, legally, to inform anyone of Mr. Mominee's conduct, when his conduct results in an adverse job action.

30. His actions bind the company and it is strictly liable for his harassment of her and his termination of her when she refused to comply with his requests. If the company does not trust Mr. Mominee to be in management, then he should not be in management.

31. An attempt to blame Plaintiff Skelton for not reporting it sooner ignores the reality of the situation – that she was forced to work under someone who abused his power.

32. Understandably upset, Plaintiff Skelton told Ms. Jensen that her behavior is the precise reason why women do not come forward with harassment allegations, and Ms. Jensen's actions perpetuate harasser's conduct when it gets swept under the rug and covered up.

33. Ms. Jensen then scheduled an in-person meeting with Plaintiff Skelton for the following week.

34. On or about December 21, 2022, Plaintiff Skelton, Ms. Jensen, and Owner Paul Elli met to discuss Plaintiff Skelton's concerns.

35. Plaintiff Skelton attempted to describe Mr. Mominee's pervasive sexual harassment, but her words were disregarded, and she was told that the Company did not believe her recollection of events.

36. When Plaintiff Skelton tried to continue her story, both Ms. Jensen and Mr. Elli abruptly ended the meeting. Plaintiff Skelton left the meeting in tears and was horrified that her allegations were taken so lightly.

## FACTUAL BACKGROUND -PLAINTIFF JODY JOHNSON

37. Plaintiff Jody Johnson was hired by the Margaritaville Restaurant on or about September 3, 2018, as a Bartender.

38. Defendant subsequently purchased the Margaritaville Restaurant in 2022, and Plaintiff Johnson was hired by Defendant in or around November 2022.

39. Plaintiff Johnson was supervised by Defendant's General Manager, Daryl Mominee, and her job duties involved working closely with him in the bar area.

40. Prior to her constructive discharge in January of 2023, Plaintiff Johnson was sexually harassed by Mr. Mominee on a daily basis.

41. On or about December 1, 2022, just eight days after Plaintiff Johnson began working with Mr. Mominee, he started asking Plaintiff Johnson if she wanted to have an affair.

42. Plaintiff Johnson was taken aback but brushed off the comments because in her many years of bartending, she was subjected to countless similar comments from customers. Plaintiff Johnson told fellow employee and Server, Makayla Schwanger, about the incident.

43. On or about December 6, 2022, Plaintiff Johnson and several other employees came to work to help Defendant renovate the restaurant.

44. Plaintiff Johnson and three other women were in the women's bathroom painting baseboards.

45. Mr. Mominee walked in unannounced, went over to Plaintiff Johnson, who was on her hands and knees, and straddled Plaintiff Johnson. Mr. Mominee took the paintbrush out of her hand, squatted down further, pressed his groin near her face, and began to paint. Mr. Mominee said, "Let me show you how to stroke it, Jody."

46. Mr. Mominee quickly returned the paintbrush to Plaintiff Johnson, stood up and walked out without saying another word.

47. The moment Mr. Mominee left, Plaintiff Johnson and the other women recounted, "did that really just fucking happen?"

48. Around the same time, Mr. Mominee was on a ladder to do repair work when he asked Plaintiff Johnson if she could hold something for him.

49. Plaintiff Johnson looked over to Mr. Mominee and was shocked to see him smiling and holding his genitals through his pants.

50. Mr. Mominee's sexual harassment of Plaintiff Johnson continued to occur on a daily basis.

51. Nearly every time Mr. Mominee walked by Plaintiff Johnson, he commented, "I just want to fuck you," or commented on her body, "If you wear the appropriate size bra, maybe your tits would not be squished into your shirt."

52. Plaintiff Johnson never responded to Mr. Mominee's conduct and continued to ignore his advances.

53. Mr. Mominee soon became aware that Plaintiff Johnson never intended to become sexually involved with him.

54. In retaliation, Mr. Mominee became hostile and controlling over Plaintiff Johnson. He yelled and demanded that Plaintiff Johnson improve her performance over the smallest of tasks.

55. Mr. Mominee became upset when there was "too much head on the beer" or even "too little head on the beer." Plaintiff Johnson was forced to remake drinks "because this Marg is terrible."

56. Plaintiff Johnson was a seasoned employee at Defendant's newly acquired restaurant, and never experienced these issues in the past. He was micromanaging and accusing her of things that were untrue because she did not want to become sexually involved with him.

57. Plaintiff Johnson felt that Mr. Mominee began unfairly targeting her after her refusal to give into his sexual advances.

58. Mr. Mominee's attitude towards Plaintiff Johnson went from countless sexual advances and comments about her body to absolute bitterness about even the most miniscule of tasks.

59. On or about January 9, 2023, Plaintiff Johnson attended a meeting with Human Resources Manager Tara Jensen.

60. At this meeting, Plaintiff Johnson voiced her concerns about Mr. Mominee's inappropriate behavior.

61. Plaintiff Johnson was shocked to learn that approximately 6 weeks earlier, another former employee, Plaintiff Shelby Skelton, reported the same sort of sexual harassment, but the report was brushed off and Plaintiff Skelton was called a liar.

62. Plaintiff Johnson simply requested that Defendant terminate Mr. Mominee, which would in essence, remedy Plaintiff Johnson's unbearable work environment.

63. Rather than terminate Mr. Mominee, Ms. Jensen focused on the idea of a potential lawsuit, rather than proposing solutions to Plaintiff Johnson's reports of harassment.

64. Plaintiff Johnson left the meeting on January 9, 2023, having made no tangible progress to convince the company that Mr. Mominee's conduct was a terminable offense.

65. Two days later, on or about January 11, 2023, Plaintiff Johnson called Ms. Jensen to find out if the company found a solution for Mr. Mominee's behavior.

66. To Mr. Johnson's dismay, Ms. Jensen informed her that the Company's corrective action for Mr. Mominee was to attend a sexual harassment training course. A sexual harassment course is not going to change the conduct of a serial sexual harasser.

67. Surely, most people know that sexual harassment is wrong and do not need to take a course on how to not sexually harass others.  Yet, this was thought to be a worthwhile solution.

68. On or about January 16, 2023, Plaintiff Johnson reached out to Owner Larren LNU on Facebook messenger because she had no other way to contact him and did not know how to contact Human Resources.

69. Plaintiff Johnson messaged Larren LNU and received a response the same day, but he provided no additional information, so she continued to endure Mr. Mominee's sexual advances.

70. On or about January 18, 2023, Plaintiff Johnson sent Owner Paul Elli a text message that stated, "After pacing my home for several hours and hearing the stories from the other girls, especially Shelby, I just can't do it."

9

71. On December 8th she was in your office with allegations that were not taken seriously, allowing Daryl to continue mistreating the staff."

72. Mr. Elli merely replied, "Thank you for reaching out to me, we accept your resignation."

73. Defendant, through Daryl Mominee, created and encouraged a hostile work environment for Plaintiff Johnson based on sex because she opposed Mr. Mominee's sexual harassment of her.

74. As a result, Plaintiff Johnson was constructively discharged on or about January 18, 2023, because no reasonable person could reasonably continue to work directly for their harasser in such a hostile work environment, nor could she continue to work for a company that did not take reports of sexual harassment seriously and continued to allow Mr. Mominee to behave this way, undeterred.

**FACTUAL BACKGROUND – PLAINTIFF EMILY MCKENZIE**

75. Plaintiff Emily McKenzie was hired by The Margaritaville Restaurant at the end of February 2022, as a Server.

76. The Margaritaville Restaurant was subsequently sold to Defendant in 2022, and Plaintiff McKenzie was hired by Defendant in or around November 2022.

77. Plaintiff McKenzie was supervised by Defendant's General Manager, Daryl Mominee, and her job duties involved working closely with him to wait tables, take orders, and provide customer service to the restaurant's patrons.

78. Prior to her constructive discharge in January of 2023, Mr. Mominee sexually harassed Plaintiff McKenzie and fostered a hostile work environment based on his pervasive sexual comments.

10

79. In or around December 2022, Kitchen Manager, Daevon LNU told Plaintiff McKenzie, "I want to motorboat your titties."

80. Plaintiff McKenzie knew that Mr. Mominee and Daevon LNU were friends outside of work, so Plaintiff McKenzie did not report Daevon LNU's conduct to Mr. Mominee or another supervisor.

81. As evidenced by Mr. Mominee's daily display of sexually inappropriate behavior, Plaintiff McKenzie knew Mr. Mominee would not take her seriously.

82. Between the time of Daevon LNU's comment until the time of Plaintiff McKenzie's constructive discharge on January 15, 2023, she witnessed countless comments by Mr. Mominee objectifying Plaintiff Skelton and Plaintiff Johnson.

83. For example, Plaintiff McKenzie overheard Mr. Mominee tell employee Eli LNU about how "Liv, Lex, Jody, and Makayla, are sexy." "Makayla has a fat ass, and I would fuck every one of them."

84. In or around the beginning of January 2023, Mr. Mominee approached Plaintiff McKenzie from behind and wrapped his arms around her waist.

85. At this point, Plaintiff McKenzie was fed up with Mr. Monimee's behavior.

86. Three days later, on or about January 15, 2023, Plaintiff McKenzie called Owner Paul Elli to discuss her concerns.

87. During this call, Plaintiff McKenzie informed Mr. Elli of the continuing issues with D's worsening sexual harassment, and Mr. Mominee's pervasive sexual harassment.

88. Mr. Elli asked if Plaintiff McKenzie would return to work if they terminated Mr. Mominee and kept Daevon LNU.

89. Plaintiff McKenzie told Mr. Elli that she refused to go back to work and was brought to tears on the phone call.

90. Plaintiff McKenzie attempted to explain to Mr. Elli how uncomfortable it was to continue working for Mr. Mominee, while having knowledge that Mr. Mominee sexually harassed or assaulted nearly every female employee in the restaurant.

91. Mr. Elli asked if Mr. Mominee had "said or done anything" to her "other than grabbing your waist?"

92. Plaintiff McKenzie replied, "no," so Mr. Elli asked her "what is the problem" if Mr. Mominee was "not harassing or assaulting you"?

93. Plaintiff McKenzie was upset by Mr. Elli's blatant victim blaming.

94. Plaintiff McKenzie insinuated that multiple women coming forward with multiple allegations of sexual harassment would not look good for the company, Mr. Elli quickly changed his attitude.

95. Mr. Elli even offered Plaintiff McKenzie a job at his winery just down the street, but again, she refused to continue her employment with a company who defended a man like Mr. Mominee.

96. As a of result of her refusal to continue working in a toxic and unbearable work environment, ripe with pervasive sexual harassment exhibited on a daily basis, Plaintiff McKenzie was constructively discharged on or about January 15, 2023.

**COUNT I – TITLE VII**

**Sexual Harassment: Hostile Work Environment/Constructive Discharge - All Plaintiffs**

97. Paragraphs 1 through 96 above are realleged and incorporated herein.

98. Defendant engaged in conduct that violates Title VII prohibiting sex discrimination, by harassing Plaintiffs, and by creating and encouraging a hostile work environment for Plaintiffs.

99. The harassment of Plaintiffs by Daryl Mominee was unwelcome, which was indicated by all Plaintiffs.

100. Mr. Mominee regularly made comments to Plaintiff Skelton about her breasts, and how big they were for someone her age.

101. Eight days after Plaintiff Johnson began working with Mr. Mominee, he started asking Plaintiff Johnson if she wanted to have an affair.

102. Nearly every time Mr. Mominee walked by Plaintiff Johnson, he commented, "I just want to fuck you," or commented on her body, "If you wear the appropriate size bra, maybe your tits would not be squished into your shirt."

103. In or around December 2022, Kitchen Manager, Daevon LNU told Plaintiff McKenzie, "I want to motorboat your titties."

104. In or around the beginning of January 2023, Mr. Mominee approached Plaintiff McKenzie from behind and he wrapped his arms around her waist.

105. The harassment was based on Plaintiffs' sex.

106. The harassing conduct was sufficiently severe or pervasive to affect the terms, conditions and privileges of employment.

107. Defendant knew or should have known of the harassment yet did not take immediate and corrective action, causing the constructive discharge of Plaintiffs.

108. On or about December 21, 2022, Plaintiff Skelton, Ms. Jensen, and Owner Paul Elli met to discuss Plaintiff Skelton's concerns with Mr. Mominee's sexual harassment.

109. On or about January 9, 2023, Plaintiff Johnson attended a meeting with Human Resources Manager Tara Jensen and voiced her concerns about Mr. Mominee's inappropriate behavior.

110. On or about January 15, 2023, Plaintiff McKenzie called Owner Paul Elli to discuss her concerns with Daevon LNU's worsening sexual harassment, and Mr. Mominee's pervasive sexual harassment.

111. As a result of the hostile environment described herein, Plaintiffs were constructively discharged from their employment.

112. As a direct and proximate result of Defendant's conduct, Plaintiffs have suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

113. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorneys' fees and costs.

### COUNT II – RC §4112

**Sexual Harassment: Hostile Work Environment/Constructive Discharge - All Plaintiffs**

114. Paragraphs 1 through 113 above are realleged and incorporated herein.

14

115. Defendant engaged in conduct that violates the Ohio Civil Rights Act prohibiting sex discrimination, by harassing Plaintiffs, and by creating and encouraging a hostile work environment for Plaintiffs.

116. Mr. Mominee regularly made comments to Plaintiff Skelton about her breasts, and how big they were for someone her age.

117. Eight days after Plaintiff Johnson began working with Mr. Mominee, he started asking Plaintiff Johnson if she wanted to have an affair.

118. Nearly every time Mr. Mominee walked by Plaintiff Johnson, he commented, "I just want to fuck you," or commented on her body, "If you wear the appropriate size bra, maybe your tits would not be squished into your shirt."

119. In or around December 2022, Kitchen Manager, Daevon LNU told Plaintiff McKenzie, "I want to motorboat your titties."

120. In or around the beginning of January 2023, Mr. Mominee approached Plaintiff McKenzie from behind and he wrapped his arms around her waist.

121. The harassment of Plaintiffs by Daryl Mominee was unwelcome, which was indicated by all Plaintiffs.

122. The harassment was based on Plaintiffs' sex.

123. The harassing conduct was sufficiently severe or pervasive to affect the terms, conditions and privileges of employment.

124. Defendant knew or should have known of the harassment yet did not take immediate and corrective action.

125. As a result of the hostile environment described herein, Plaintiffs were constructively discharged from their employment.

126. As a direct and proximate result of Defendant's conduct, Plaintiffs have suffered and will continue to suffer economic and non-economic damages, including but not limited to serious emotional distress and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

127. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendants are liable for compensatory damages, punitive damages and reasonable attorneys' fees and costs.

## COUNT III – TITLE VII

### Retaliation – All Plaintiffs

128. Paragraphs 1 through 127 above are realleged and incorporated herein.

129. Plaintiff engaged in a protected activity by, inter alia, opposing the sexual harassment and hostile work environment.

130. Plaintiff Skelton opposed all of Mr. Mominee's sexual comments and advances, and as a result Mr. Mominee became very rude after he realized that she would not give in to his sexual desires. In particular, Plaintiff Skelton saw Mr. Mominee's attitude worsen significantly about 3 days prior to her termination.

131. Plaintiff Johnson never responded to Mr. Mominee's conduct and continued to ignore his advances and in retaliation, Mr. Mominee became hostile and controlling over Plaintiff Johnson.

132. Mr. Mominee yelled and demanded that Plaintiff Johnson improve her performance over the smallest of tasks. Plaintiff Johnson was forced to remake drinks "because this Marg is terrible," "too much head on the beer," or "too little head on the beer."

16

133. In or around the beginning of January 2023, Mr. Mominee approached Plaintiff McKenzie from behind and wrapped his arms around her waist.

134. Plaintiff McKenzie was fed up with Mr. Monimee's behavior and three days later, on or about January 15, 2023, Plaintiff McKenzie called Owner Paul Elli to discuss her concerns.

135. Defendant was aware that Plaintiffs engaged in a protected activity when Plaintiffs opposed Mr. Mominee's sexual advances.

136. Once Plaintiffs engaged in a protected activity, Defendant intentionally retaliated against them by constructively discharging Plaintiffs from their employment, by refusing to remedy the situation, refusing to provide a reasonable and non-hostile work environment and otherwise discriminating against Plaintiffs in the terms, privileges and conditions of their employment.

137. As a direct and proximate cause of Defendant's conduct, Plaintiffs have suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

138. Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorneys' fees and costs.

### COUNT IV- RC §4112

### Retaliation – All Plaintiffs

139. Paragraphs 1 through 138 above are realleged and incorporated herein.

140. Plaintiff engaged in a protected activity by, inter alia, opposing the sexual harassment and hostile work environment.

141. Plaintiff Skelton opposed all of Mr. Mominee's sexual comments and advances, and as a result Mr. Mominee became very rude after he realized that she would not give in to his sexual desires. In particular, Plaintiff Skelton saw Mr. Mominee's attitude worsen significantly about 3 days prior to her termination.

142. Plaintiff Johnson never responded to Mr. Mominee's conduct and continued to ignore his advances and in retaliation, Mr. Mominee became hostile and controlling over Plaintiff Johnson.

143. Mr. Mominee yelled and demanded that Plaintiff Johnson improve her performance over the smallest of tasks. Plaintiff Johnson was forced to remake drinks "because this Marg is terrible," "too much head on the beer," or "too little head on the beer."

144. In or around the beginning of January 2023, Mr. Mominee approached Plaintiff McKenzie from behind and wrapped his arms around her waist.

145. Plaintiff McKenzie was fed up with Mr. Monimee's behavior and three days later, on or about January 15, 2023, Plaintiff McKenzie called Owner Paul Elli to discuss her concerns.

146. Defendant was aware that Plaintiff engaged in a protected activity.

147. Once Plaintiffs engaged in a protected activity, Defendant intentionally retaliated against them by constructively discharging Plaintiffs from their employment, by refusing to remedy the situation, refusing to provide a reasonable and non-hostile work

18

environment and otherwise discriminating against Plaintiffs in the terms, privileges and conditions of their employment.

148.  As a direct and proximate cause of Defendant's conduct, Plaintiffs have suffered and will continue to suffer economic and non-economic damages, including but not limited to pain and suffering and the loss of salary, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

149.  Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages and reasonable attorneys' fees and costs.

WHEREFORE, Plaintiffs demand:

For all Counts, monetary damages including back pay and benefits, statutory liquidated damages, expert witness fees and attorneys' fees and costs, and front pay, compensatory damages and punitive damages in an amount to be determined at trial, but in any event not less than $500,000.00 and any and all other relief, which the Court deems just and appropriate.

    Respectfully submitted,

    /s/Rachel Sabo Friedmann
    Rachel Sabo Friedmann (0089226)
    (*Rachel@TheFriedmannFirm.com*)
    Peter G. Friedmann (0089293)
    (Pete@TheFriedmannFirm.com)
    Casey D. Mayell (0102178)
    (Casey@TheFriedmannFirm.com)
    **The Friedmann Firm LLC**
    3740 Ridge Mill Dr
    Hilliard, Ohio 43026
    Telephone: (614) 610-9755

    *Counsel for Plaintiffs*

## **JURY DEMAND**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/Rachel Sabo Friedmann, Esq.
Rachel Sabo Friedmann (0089226)
