# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**JODY JOHNSON, et al.,**                     CASE NO. 3:23 CV 730

     Plaintiffs,

     v.                                      JUDGE JAMES R. KNEPP II

**212 FREMONT SANDUSKY
WINE & SPIRIT, LLC,**

     Defendant.                           **MEMORANDUM OPINION AND
ORDER**

## INTRODUCTION

In this case, three former employees, Shelby Skelton, Jody Johnson, and Emily McKenzie (collectively "Plaintiffs") allege they were subjected to sexual harassment and retaliation by their employer, Defendant 212 Fremont Sandusky Wine & Spirit, LLC, in violation of Title VII of the Civil Rights Act of 1964 and Ohio's anti-discrimination law (Ohio Rev. Code Chapter 4112). Currently before the Court are Defendant's Motion for Summary Judgment (Doc. 17), and Motion to Strike Plaintiff Shelby Skelton's Declaration (Doc. 22). Plaintiffs opposed the motion for summary judgment (Doc. 18), and Defendant replied (Doc. 21). Plaintiffs did not oppose the Motion to Strike. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367. For the following reasons, Defendant's Motions are granted in part and denied in part.

**BACKGROUND**

<u>The Restaurant</u>

Defendant purchased the Original Margaritaville (the "Restaurant") in November 2022. (Jensen Dec., at ¶ 6).[1] At the time of the purchase, Paul Elli and Tara Jensen, members of the ownership team, met with employees to go over the Restaurant's policies, procedures, and issue-reporting options. *Id.* at ¶ 7. Specifically, Elli and Jensen reviewed an employee handbook that prohibited all forms of harassment, including sexual harassment, and explained how to submit complaints of harassment or discrimination. *Id.* at ¶¶ 7-8. Jensen testified she told the employees they could complain directly to the ownership team. *Id.* at ¶ 7.

After the purchase, the Restaurant was temporarily closed for renovations. *Id.* at ¶ 9. During this time, Plaintiffs Skelton and Johnson worked for Defendant. (Skelton Depo., at 8)[2]; (Johnson Depo., at 7-8)[3].

The Restaurant officially re-opened in December 2022. (Jensen Dec., at ¶ 9). At the time the Restaurant re-opened, it had two management employees—general manager Daryl Mominee and kitchen manager Deveon Sharpey. *Id.*

<u>Employee Handbook</u>

The Restaurant's employee handbook expressly prohibits all types of discrimination, harassment, bullying and retaliation. *See* Doc. 18-5. The handbook also provides a specific definition of sexual harassment as well. *Id.* at 8. Under the heading titled "Complaint Process", the handbook states:

> The Original Margaritaville recognizes that a peaceful working environment facilitates productivity and will continue to take the necessary steps to create a

---

1. Tara Jensen's declaration can be located at ECF Doc. 17-1.
2. Shelby Skelton's deposition can be located at ECF Doc. 17-4.
3. Jody Johnson's deposition can be located at ECF Doc. 17-3.

harmonious working environment. If a misunderstanding or conflict arises, every effort should be made to resolve the situation in a timely manner. Should the situation persist, you are encouraged to bring the complaint to the attention of management.

Note: Complaints alleging violations of the Company's discrimination/harassment policy should be handled in accordance with the policy entitled "Policy Prohibiting Harassment and Discrimination[4]."

*Id.* at 9.

Plaintiffs' Employment

*Skelton*

Skelton was employed from November 8, 2022, until early December 2022, and worked a total of approximately forty hours. (Jensen Dec., at ¶ 13); (Skelton Dec., at ¶ 2)[5]. She denies attending a formal meeting where Paul and Jensen allegedly outlined its anti-harassment and complaint policies. (Skelton Depo., at 5).

Skelton claims that early in her employment, Mominee told her the Restaurant's Spanish-speaking contractors "only spoke to her because [she] had large breasts." *Id.* at 12-13. In December 2022, Skelton asked Mominee for additional shifts, but Mominee declined, citing Skelton's issues with co-workers and phone use during work hours; Skelton states she had no knowledge of these issues. *Id.* at 9-10.

After Mominee had removed her from the schedule, Skelton filed a complaint for sexual harassment. *Id.* at 15-16. Skelton did not go in and complain prior to being removed from the schedule. *Id.* Elli and Jensen contend that, upon receiving her complaint, they interviewed those

---

4. The referenced "Policy Prohibiting Harassment and Discrimination" is a section of the handbook that consists of a little over two pages. (Doc. 18-5, at 8-10). The "Complaint Process" section quoted above is a sub-section therein. There is no additional procedure detailed for filing complaints within that section.
5. Shelby Skelton's declaration can be located at ECF Doc. 18-7.

involved and found it unsubstantiated. (Jensen Dec., at ¶¶ 15-17). Jensen maintains Skelton was terminated for cause on December 11, 2022. *Id.* at ¶ 17.

*Johnson*

Johnson worked at the Restaurant from November 2022 through mid-January 2023. (Jensen Dec., at ¶ 11); (Johnson Dec., at ¶ 2)[6]. She assisted with renovations in November, then began bartending after the Restaurant reopened in December. (Johnson Depo., at 8).

Johnson alleges that within her first two weeks of working under Mominee, he suggested having an affair with her. (Jensen Depo., at 28)[7]. Johnson also recalls a sexually suggestive gesture by Mominee that occurred during the Restaurant renovation. (Johnson Dec., at ¶¶ 6-7). Johnson claims Mominee became controlling and critical of her work performance after she turned him down. *Id.* at ¶¶ 8-9. Although they exchanged friendly text messages in December and early January, Johnson describes her participation in those messages as "brown-nos[ing]" to move up in the company. (Johnson Depo., at 11-12).

On January 16, 2023, Johnson sent a Facebook message to Lauren Wikkel, another member of Defendant's ownership team, complaining of Mominee's behavior. (Jensen Dec., at ¶ 19). Following the message, Johnson met with Jensen and Elli to discuss her concerns. (Johnson Depo., at 15). Jensen stated Mominee denied the allegations and asserted Johnson was merely mad that another employee was promoted to bar manager over her. (Jensen Depo., at 30). Jensen and Elli ultimately required Mominee to undergo sexual harassment training and offered Johnson a transfer to a different establishment owned by Defendant. (Jensen Dec., at ¶ 22). Johnson instead resigned in January 2023, claiming the remedial steps were inadequate. *Id.* at ¶ 23.

---

6. Jody Johnson's declaration can be located at ECF Doc. 18-6
7. Tara Jensen's deposition can be located at ECF Doc. 19-1.

*McKenzie*

McKenzie was hired as server on December 6, 2022, and worked from December 25, 2022, until mid-January 2023. (Jensen Dec., at ¶ 24; McKenzie Depo., at 16-17)[8].

On January 15, 2023, McKenzie contacted Elli to submit a complaint. (McKenzie Depo., at 17). McKenzie testified Sharpey asked if he could "motorboat [her] titties." *Id.* at 15. The date and location of this comment is disputed. McKenzie testified it occurred on January 15, 2023, in a Snapchat message *Id.* at 27, while Elli claims it was on January 13, 2023, when the two were sitting at the Restaurant's bar (Elli Dec., at ¶¶ 25-26)[9]. Jensen and Elli investigated the incident by reviewing the Restaurant's surveillance system, and testified Sharpey merely asked McKenzie to cover up after she changed into a low-cut shirt. *Id.* at ¶ 26. But ownership still required Sharpey to attend sexual harassment training. *Id.* at ¶ 27.

McKenzie also testified Mominee physically grabbed her waist on multiple occasions. (McKenzie Depo., at 22). In response to these allegations, Jensen and Elli offered McKenzie a transfer to a different location, but she declined, *Id.* at 20-23. McKenzie then resigned in mid-January. (Elli Dec., at ¶ 28).

## STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case

---

8. Emily McKenzie's deposition can be located at ECF Doc. 17-5
9. Paul Elli's declaration can be located at ECF Doc. 17-2.

contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* The nonmoving party must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. Further, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting the court "need consider only the cited materials").

<u>Motion to Strike</u>

As an initial matter, the Court will address Defendant's Motion to Strike portions of Skelton's declaration. (Doc. 22). Skelton submitted the declaration in support of her opposition to Defendant's Motion for Summary Judgment. (Doc. 18-7).

Defendant argues portions of Skelton's declaration should be stricken from the record because it directly contradicts her sworn deposition and testimony, and thereby violates Federal Rule of Civil Procedure 56(c)(2) which states: "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."

Sixth Circuit case law establishes that a party opposing summary judgment cannot create a material factual dispute by submitting an affidavit that contradicts prior deposition testimony without sufficient explanation:

> When a party says one thing live at a deposition but another thing in a written statement, the change is conspicuous. The written words—often composed by the party's lawyer—look too contrived to deserve any weight. The rule therefore is

6

that a party opposing summary judgment with an affidavit that contradicts her earlier deposition must explain why she disagrees with herself.

*Powell-Pickett v. AK Steel Corp.*, 49 F. App'x 347, 352 (6th Cir. 2013); *see also Penny v. United Parcel Service*, 128 F.3d 408, 415 (6th Cir. 1997) (holding "a party cannot create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts his earlier deposition testimony.")

Defendant moves to strike paragraphs four and five of Skelton's declaration, arguing they contradict her deposition testimony. Those paragraphs state:

4. Within the first few days of working for Mominee, he began speaking his mind about my body.

5. Mominee regularly made comments to me about my breasts, and how big they were for someone my age.

(Skelton Dec., at ¶¶ 4-5). However, during her deposition, Skelton testified:

Q. And as to those comments, I guess let's take one step back. The only time that you say that anybody made anything directly to you as a comment is the one about the contractors right?

A. Yes.

Q. Okay. That one – that one we've talked about. Everything else was directed to someone else or your overheard conversations?

A. Yes.

(Skelton Depo., at 15). The Court finds these statements to be contradictory. Skelton's deposition testimony states that the only direct comment made to her was related to the contractors, but her declaration broadly asserts that Mominee regularly made direct comments about her body. Because Skelton does not provide an explanation for this contradiction, paragraphs 4-5 of her declaration must be stricken and will not be considered in evaluating the summary judgment motion.

7

Defendant further seeks to strike paragraphs seven through eleven, which describe alleged retaliation and a shift in Mominee's attitude. Skelton's declaration states:

> 7. I never responded to Daryl Mominee's sexually suggestive conduct and continued to ignore his advances and in retaliation, Daryl Mominee became hostile and controlling over me.
>
> 8. In the beginning of December 2022, I noticed a rapid and significant shift in Mominee's attitude. I opposed all of Mominee's sexual comments and advances, and as a result Mominee became very rude after he realized that I would not give in to his sexual desires.
>
> 9. In particular, I noticed Mominee's attitude worsen significantly just a few days prior to my termination.
>
> 10. For example, I encountered an issue with the restaurant's new POS system, and asked Mominee for assistance in order to cash out customers. Mominee quickly became hostile and threatened me by saying "Say another word, I dare you."
>
> 11. On December 13, 2022, Mominee abruptly terminated my employment in retaliation for opposing his sexual comments and advances, alleging that I had excessive phone usage, treated other staff poorly, and exhibited bad customer service.

(Skelton Dec., at ¶¶ 7-11). Defendant contends these statements contradict the following testimony from Skelton's deposition:

> Q. And until Daryl had taken you off of the schedule, you didn't go in and complain, right?
>
> A. Yes.
>
> Q. You're saying, yes, that's true?
>
> A. Yes.

(Skelton Depo., at 15-16). Unlike the contradiction between the deposition testimony and paragraphs four to five of Skelton's declaration, the Court does not find the above statements to be contradictory. Skelton's deposition testimony confirms that she did not formally complain before being removed from the schedule, but it does not contradict her assertion that Mominee's

behavior changed in response to her reaction of his comment. Because no direct contradiction is present, paragraphs 7-11 of Skelton's declaration will not be stricken.

For the reasons stated above, Defendant's Motion to Strike is granted in part and denied in part. Paragraphs 4-5 of Skelton's declaration are stricken from the record, as they directly contradict her deposition testimony without explanation. However, paragraphs 7-11 remain, as they do not amount to a direct contradiction.

### DISCUSSION

Plaintiffs all allege sexual harassment in violation of Title VII and Ohio Revised Code 4112. Johnson and McKenzie further allege constructive discharge, and each Plaintiff alleges retaliation. Defendant asserts Plaintiffs' sexual harassment claims fail because they have not shown the alleged conduct was severe or pervasive, or that Defendant can be held vicariously liable for the actions of Mominee or Sharpey. Moreover, Defendant asserts that Johnson and McKenzie's constructive discharge claims fail because Defendant took reasonable steps to address their concerns. Defendant further contends all three Plaintiffs cannot establish retaliation because none reported the alleged misconduct until after they stopped working.

Sexual Harassment / Hostile Work Environment (All Plaintiffs)

Plaintiffs allege sex-based harassment in violation of Title VII and Ohio Revised Code Chapter 4112. Defendant asserts Plaintiffs' sexual harassment / hostile work environment claims fail because Plaintiffs cannot prove the fourth and fifth elements of their claims. (Doc. 17, at 15). As such, the Court will focus its analysis on the fourth and fifth elements of Plaintiffs' sexual harassment claims.

Both Title VII and Ohio Revised Code Chapter 4112 sexual harassment claims proceed under the same analytical framework. *See Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th

Cir. 2004). To prevail on a hostile work environment claim under either, a plaintiff must show that: "(1) she was a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the charged sexual harassment created a hostile work environment; and (5) the employer is liable." *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006) (citation omitted). A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). Both an objective and subjective test must be met; the conduct must be so severe or pervasive as to constitute a hostile or abusive working environment both to the reasonable person and the actual victim. *Id.* at 21-22. As part of the analysis, this Court considers the totality of the circumstances, rather than each event in isolation. *Id.* These circumstances may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23. Title VII was not meant to create a "general civility code," and the "sporadic use of abusive language, gender-related jokes, and occasional teasing" are not sufficient to establish liability. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). The Sixth Circuit has observed that whether harassment meets this severe or pervasive standard is quintessentially a question of fact. *Jordan v. City of Cleveland*, 464 F.3d 584, 597 (6th Cir. 2006)). Nonetheless, summary judgment may be granted if, taking the evidence in the light most favorable to the plaintiff, the alleged conduct was not severe or pervasive. *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 707 (6th Cir. 2007).

If the harasser is a supervisor, and the harassment did not culminate in a tangible employment action, an employer may raise the *Faragher*/*Ellerth* affirmative defense to avoid vicarious liability. This defense requires the employer to show: (1) it exercised reasonable care to prevent and promptly correct any harassing behavior, and (2) the plaintiff unreasonably failed to take advantage of preventive or corrective opportunities (such as an internal complaint procedure). *Faragher*, 524 U.S. at 778; *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). If a tangible employment action did occur, however, the defense is unavailable, and the employer is strictly liable for the supervisor's harassment.

*Skelton*

Skelton testified Mominee made a single remark referencing her breast size, in effect stating contractors only spoke to her because of her breasts. (Skelton Depo., at 15-16). However, aside from this isolated crude comment about her body, Skelton points to no evidence of further sexual comments, advances, touching, or repeated harassment during her brief employment. A one-time inappropriate remark, while certainly entirely inappropriate and unprofessional, is generally not enough to meet the *severe or pervasive* threshold under Sixth Circuit law. *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000) (holding isolated offensive remarks or occasional comments cannot usually support a hostile environment claim); *see also Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 351 (6th Cir. 2005) (holding sporadic remarks or intimidation often do not suffice). Because Skelton does not meet the stringent "severe or pervasive" requirement, her Title VII and Chapter 4112 sexual harassment/hostile work environment claims fail.

11

*Johnson*

Johnson testified Mominee suggested the two have an affair, made one sexual gesture, and became controlling or critical as a result of her not responding to his advancements. (Johnson Dec., at ¶¶ 5-9). Although the alleged hostility may have made work unpleasant, Sixth Circuit authority requires more to rise to an actionable level of severity or pervasiveness. For example, in *Clark*, a supervisor's off-color remarks and rude behavior over a couple of months were not enough when they lacked physical intimidation or extreme abuse. 400 F.3d at 464. Johnson therefore fails to establish the fourth element. Her hostile work environment claim does not meet the severe or pervasive standard and therefore does not survive summary judgment.

*McKenzie*

McKenzie contends that Mominee grabbed her waist multiple times (McKenzie Depo., at 12), and that Sharpey asked, via Snapchat, if he could "motorboat [her] titties." *Id.* at 15. The Sixth Circuit recognizes that a single instance of unwelcome physical contact -- particularly one of a sexual nature -- combined with an explicit sexual remark can be "severe or pervasive" depending on context. *See Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 334-35 (6th Cir. 2008) (holding physical contact plus explicit comments may create a hostile environment). In contrast to Skelton and Johnson, the nature of the harassment McKenzie identifies is more direct and physical. Therefore, the Court finds McKenzie has presented evidence to establish a genuine issue of material fact regarding whether a hostile work environment existed.

Next, the Court will examine the fifth and final element to a sexual harassment claim -- whether Defendant, as the employer, is liable for the alleged harassment. Because Mominee and Sharpey were managers, they arguably functioned as McKenzie's supervisors. *See Vance v. Ball State Univ.*, 570 U.S. 421, 428 (2013). ("In *Ellerth* and *Faragher*, however, we held that

12

different rules apply where the harassing employee is the plaintiff's "supervisor." In those instances, an employer may be *vicariously* liable for its employees' creation of a hostile work environment."). (emphasis in original).

The next question the Court must answer is whether McKenzie's resignation amounts to a tangible employment action. A tangible employment action is defined as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 144 (2004) (quoting *Ellerth,* 524 U.S. at 761).

Here, there is an added layer of complexity because, unlike a straightforward termination or demotion, McKenzie alleges constructive discharge—that is, she claims she resigned due to intolerable working conditions rather than being explicitly fired or demoted. This distinction is critical because a constructive discharge does not automatically constitute a tangible employment action for purposes of employer liability under Title VII. *Id.* at 151-52. Instead, constructive discharge qualifies as a tangible employment action only if it results from an official act of the employer, such as a demotion, pay reduction, or other employment action that alters the employee's status in a way that compels resignation. *Id.*

Here, McKenzie resigned, claiming that her work environment became intolerable due to harassment from her supervisors, Mominee and Sharpey. However, her resignation came after she was offered a position at an alternate location, as opposed to any of the examples outlined in *Suders*. Because her resignation was not preceded by an official employment action that made her employment intolerable, *Suders* commands that her constructive discharge does not qualify as a tangible employment action.

13

Where the harasser is a supervisor, an employer is vicariously liable unless it can prove the *Faragher/Ellerth* affirmative defense, which requires showing: (1) the employer took reasonable care to prevent and promptly correct any harassing behavior, and (2) the plaintiff unreasonably failed to utilize its complaint procedures. *Clark*, 400 F.3d at 348-49.

> The affirmative defense encompasses active and inactive components: before the employer can benefit from the defense, it must prove both that it *acted* reasonably in preventing and correcting harassment and that the victimized employee unreasonably *failed to act* by not utilizing complaint opportunities. The employer will lose this defense if it fails either prong.

*Id.* at 349.

Regarding the first prong, Defendant points to its immediate investigation, mandatory harassment training for Mominee and Sharpey, and its offer to transfer McKenzie. (Doc. 17 at 5-6.) "The most significant immediate measure an employer can take in response to a sexual harassment complaint is to launch a prompt investigation to determine whether the complaint is justified." *Collette v. Stein-Mart, Inc.*, 126 F. App'x 678, 686 (6th Cir. 2005) (quoting *Swenson v. Potter*, 271 F.3d 1184, 1193 (9th Cir. 2001)). "By doing so, the employer puts all employees on notice that it takes such allegations seriously and will not tolerate harassment in the workplace." *Id.* (internal quotation marks omitted). Although the question of whether Defendant exercised "reasonable care" may present issues of fact for a jury, the Court need not definitely resolve it here because the Court concludes the second prong is not met.

The second prong is a closer call. The employee handbook outlines the complaint process:

> The Original Margaritaville recognizes that a peaceful working environment facilitates productivity and will continue to take the necessary steps to create a harmonious working environment. If a misunderstanding or conflict arises, every effort should be made to resolve the situation in a timely manner. Should the situation persist, you are encouraged to bring the complaint to the attention of management.

14

> Note: Complaints alleging violations of the Company's discrimination/harassment policy should be handled in accordance with the policy entitled "Policy Prohibiting Harassment and Discrimination."

(Doc. 18-5, at 9). It does not provide a specific individual to contact nor particular method, whether formally or informally.

Under these facts, McKenzie's allegations of physical intrusion and an overtly sexual proposition may rise to the severe or pervasive threshold. A genuine issue of fact exists about whether Defendant's response satisfied the *Faragher/Ellerth* liability standards. Her hostile work environment claim thus survives for further proceedings.

Constructive Discharge (Johnson and McKenzie)

Johnson and McKenzie assert constructive discharge. (Doc. 18, at 6). Defendant contends their claims fail because Jensen and Elli conducted an investigation and offered both positions at different locations with different management. (Doc. 21, at 7,9).

Constructive discharge imposes a higher standard than hostile work environment. *Yates v. Avco Corp.*, 819 F.2d 630, 636-37 (6th Cir. 1987). To demonstrate a constructive discharge, a plaintiff must provide evidence that: (1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person, and (2) the employer did so with the intention of forcing the employee to quit. *Laster v. City of Kalamazoo*, 746 F.3d 714, 727-28 (6th Cir. 2014). The Sixth Circuit explained constructive discharge as "[w]hen an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns, the employer's conduct may amount to constructive discharge." *Id.* at 728. "To determine if there is a constructive discharge, both the employer's intent and the employee's objective feelings must be examined." *Logan v. Denny's, Inc.*, 259 F.3d 558, 569 (6th Cir. 2001)

15

(internal citations omitted). In *Logan*, the Sixth Circuit formally adopted the following factors to determine whether the first prong of this inquiry is met:

> Whether a reasonable person would have fe[lt] compelled to resign depends on the facts of each case, but we consider the following factors relevant, singly or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Id.* at 569 (quoting *Brown v. Bunge Corp.*, 207 F.3d 766, 782 (5th Cir. 2000)).

The evidence shows Defendant took affirmative steps to address the alleged issues. Specifically, both Plaintiffs were offered the option to transfer to an alternate location and Mominee and Sharpey completed sexual harassment training. Johnson and McKenzie have not argued the transfer resulted in any demotion, salary, or any other factor listed above. These corrective measures indicate that Defendant was committed to remedying the situation rather than seeking to compel resignation. Moreover, the record reveals that Defendant expressly desired to retain Johnson as a valuable employee, further underscoring that there was no intent to force her departure. (Jensen Dec., at 22). By contrast, in *Jemison v. AFIMAC Global*, the plaintiffs presented evidence of multiple and ongoing acts of sexual harassment and humiliation from a supervisor and were forced to work and live near him at the initial work site. 645 F. Supp. 3d 781, 800 (N.D. Ohio 2022). The plaintiffs were removed from the work site, only to find the supervisor two doors down from their hotel without any clear reason for his presence. *Id.* The plaintiffs were given an ultimatum – they could either return to the work site and work for, and live alongside the supervisor, or quit. *Id.* These facts led the *Jemison* court to conclude that there was a genuine issue of material fact as to whether any reasonable person in the plaintiffs'

position would have felt compelled to resign. By contrast, here Defendant took affirmative steps to address Plaintiffs' complaints.

Accordingly, because neither Johnson nor McKenzie has demonstrated that Defendant engaged in conduct designed to induce their resignations such as an official employment action or other measures intended to compel them to quit, the Court finds their constructive discharge claims do not survive. The evidence shows that Defendant not only refrained from taking any adverse official action but also actively sought to address the issues raised by both Plaintiffs.

Retaliation (All Plaintiffs)

All three Plaintiffs bring claims of retaliation under both Title VII and Ohio law. Defendant asserts Plaintiffs cannot prove a *prima facie* case of retaliation. (Doc. 17, at 13). Specifically, Defendant contends Plaintiffs "cannot prove they partook in protected activity while actively employed by Defendant" since they all complained after their final days of work. *Id.* at 14. Moreover, regarding Johnson and McKenzie, Defendant asserts they were offered to return to work at the Restaurant or at another restaurant owned by Defendant, thus neither can prove an adverse action resulting from their complaints to Defendant. *Id.* Lastly, Defendant asserts Skelton cannot prove an adverse action since she was already terminated. *Id.* Plaintiffs argue they "engaged in a protected activity that Defendant was aware of by opposing the sexual harassment and hostile work environment and reporting their concerns to Jensen and Elli." (Doc. 18, at 9).

Title VII forbids retaliation against an employee because she opposes conduct made unlawful by the statute or participates in a related investigation or proceeding. 42 U.S.C. §

17

2000e-3(a).[10] To make a *prima facie* showing of Title VII retaliation, an employee must show "(1) . . . she engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action." *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008). If the employee makes this showing, the burden shifts to the employer to articulate a "legitimate, nondiscriminatory reason for its actions." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008). The burden then shifts back to the plaintiff to show the proffered reason is pretextual—for example, by demonstrating it had no basis in fact, did not actually motivate the decision, or was insufficient to warrant the action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009).

*Skelton*

Skelton contends she opposed Mominee's comment, which resulted in his attitude worsening prior to her termination as described in her declaration. (Doc. 18, at 9). As established above, the only comment alleged relates to Mominee's crude remark about the contractors. But while Defendant's ownership says she did not complain until after her removal from the schedule (Doc. 21 at 4), Skelton claims that Mominee had actual knowledge of her opposition. The Court find this sufficient, since Mominee was directly responsible for deciding whether to schedule Skelton. She suffered an adverse action -- being terminated -- and the temporal proximity between Mominee's comment and her removal from the schedule plus Mominee's dual role as harasser and decision-maker can support causation.

---

10. Ohio Revised Code Chapter 4112 is "Title VII's Ohio state corollary." *Vehar v. Cole Nat'l Grp., Inc.*, 251 F. App'x 993, 1002 (6th Cir. 2007). The Court therefore addresses the two claims together.

Defendant's proffered non-retaliatory reason for Skelton's termination is performance problems (phone usage, arguing with coworkers. (Jensen Dec., at ¶ 14). In her deposition, Skelton contends she never had problems with coworkers, but admitted to using her phone during work hours. (Skelton Depo., at 10). Skelton asserts Defendant never mentioned any issues before taking her off the schedule, and therefore concludes they are pretext. But this is an issue for a jury; a reasonable factfinder could find these performance issues either credible or unsubstantiated in motivating the discharge, but this Court cannot say either way. *See Chen*, 580 F.3d at 400.

In conclusion, there is a genuine factual dispute over whether performance issues truly caused Skelton's termination or whether her opposition to alleged sexual harassment did. In the end, the Court is not completely convinced Defendant has met its burden in providing a reason for termination, so this claim survives albeit not by a large margin.

*Johnson and McKenzie*

Johnson and McKenzie's retaliation claims falter at the fourth element required to establish a *prima facie* case under Title VII -- a causal connection between the protected activity and the materially adverse action. "To prove causation in a Title VII retaliation case, a plaintiff must show that the employee's protected activity was a 'but for' cause of the employer's adverse action against her, meaning the adverse action would not have occurred absent the employer's desire to retaliate". *George v. Youngstown State Univ.*, 966 F.3d 446, 459 (6th Cir. 2020)

Here, Johnson and McKenzie submitted complaints and subsequently did not return to work after lodging these complaints. Because they reported their complaints and never returned to work afterward, Johnson and McKenzie have not shown how Defendant retaliated against them. Thus, the required causal connection between their protected activity and the alleged

19

retaliation is not established. By contrast, Skelton was directly terminated by her supervisor who was also her alleged harasser clearly establishing a causal link between her protected activity and the materially adverse action.

Therefore, Johnson's and McKenzie's retaliation claims do not survive summary judgment.

Accordingly, Skelton's hostile work environment claim fails, but her retaliation claim survives. Johnson's hostile work environment and constructive discharge claims fail, and consequently her retaliation claim also fails. McKenzie's hostile work environment survives, but her constructive discharge and retaliation claims do not.

The claims remaining for trial are Skelton's retaliation claim and McKenzie's hostile work environment claim.

CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendant's Motion to Strike Portions of Skelton's Declaration (Doc. 22), be and the same hereby is, GRANTED IN PART and DENIED IN PART as set forth herein; and it is

FURTHER ORDERED that Defendant's Motion for Summary Judgment (Doc. 17) be, and the same hereby is, GRANTED IN PART and DENIED IN PART as set forth herein.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: March 18, 2025